# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| The South Carolina Shrimpers Association,<br><br>       Plaintiff,<br>  v.<br><br>Hushpuppies Seafood Company, LLC, Homegrown Hospitality, LLC d/b/a Pearlz Oyster Bar, Page's Incredible Kitchen, LLC d/b/a Page's Okra Grill, Southern Roots BBQ, LLC, O'Charley's LLC d/b/a Dockside Charlie's, CCH-Market, LLC d/b/a Charleston Crab House, CCH-Market, LLC d/b/a Oyster House and O-Bar, Saltwater Cowboys LLC, Bottle Cap Management Group, LLC d/b/a Sunset Waterfront Dining, Redwing, LLC d/b/a Red's Icehouse, Tavern & Table LLC, Water's Edge LLC, Crave Hospitality Group LLC d/b/a The Mill Street Tavern, Rivers 1018 LLC d/b/a Family Seafood Market, Charleston Hospitality, LLC d/b/a Wreckfish Bar & Grill, Restaurante La Costa LLC, John Doe Restaurants 1-15, AWShucks SC, LLC,<br><br>       Defendants. | Case No. 2:25-cv-05439-RMG<br><br>**ORDER** |

This matter is before the Court on Defendants' motions to dismiss for lack of standing and for failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Dkt. Nos. 129, 130, 131, 132, 133, 134, 135, 137, 138, 139). Plaintiff has filed responses in opposition (Dkt. Nos. 140, 141, 142, 143, 144, 145, 149), and Defendants have filed replies. (Dkt. Nos. 147, 148, 150, 151, 152, 153, 154, 155, 156, 158, 159). For the reasons set forth below, the motions to dismiss are granted.

1

I. **Background**

Plaintiff is a nonprofit member organization with a stated mission of "representing the interests of [] South Carolina's shrimping industry." (Dkt. No. 111, at ¶ 4). It alleges that "[i]n May 2025, a seafood technology consulting company conducted a study to determine the veracity of representations by certain restaurants in the Charleston area that purported to serve local shrimp." *Id*. at ¶ 37. From this study, Plaintiff claims, it was discovered that many of these restaurants acquired shrimp from "foreign markets[,] such as Ecuador, India, Vietnam, and China." *Id*. at ¶ 38. Plaintiff "alleges in general terms" that Defendants' restaurants are among those making misrepresentations about the origins of the shrimp they serve to customers. (Dkt. Nos. 140, at 2). Defendants allegedly misrepresented the origin of their shrimp through "advertisements, . . . printed menus and online listings, . . . restaurant signage, and . . . verbal representations to customers." (Dkt. No. 111, at ¶ 33). Because of Defendants' alleged misrepresentations, consumers were deceived, sales were diverted "from legitimate local shrimpers," and South Carolina's shrimp market was "unfairly diluted." *Id*. at ¶ 35. Moreover, Plaintiff "and its members" have suffered harm to their goodwill and reputation. *Id*. at ¶ 39.

Accordingly, Plaintiff brought this action on behalf of its members, alleging False Designation of Origin and Unfair Competition in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), and Unfair and Deceptive Trade Practices in violation of the South Carolina Unfair Trade Practices Act ("SCUTPA"), S.C. Code Ann. § 39-5-10 *et seq*. *Id*. at 7-9. Plaintiff seeks monetary damages, injunctive relief, disgorgement of profits, treble damages, punitive damages, and attorney's fees. *Id*. at 8-9. Defendants now facially challenge Plaintiff's standing to sue and the sufficiency of the Amended Complaint. (Dkt. Nos. 129, 130, 131, 132, 133, 134, 135, 137, 138, 139). This matter is ripe for disposition.

## II. Legal Standard

### A. Rule 12(b)(1)

Under Rule 12(b)(1), a party may assert that a court lacks subject matter jurisdiction over a plaintiff's complaint by challenging the plaintiff's standing. *See White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 459 (4th Cir. 2005). This challenge under Rule 12(b)(1) may proceed either as a facial challenge, contending that the allegations in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "that the jurisdictional allegations of the complaint are not true." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)) (punctuation omitted). When a defendant facially challenges the complaint, "the plaintiff . . . is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration," meaning a court must accept all factual allegations in the complaint as true. *Id.* at 192 (citation omitted). *See also S.C. State Conf. of NAACP v. Alexander*, No. 3:21-cv-03302-JMC, 2022 WL 453533, at *1 (D. S.C. Feb. 14, 2022) ("The same standard generally applies to both a motion to dismiss for failure to state a claim under Rule 12(b)(6) and a motion to dismiss for lack of standing under Rule 12(b)(1).") (citation omitted). For a factual challenge, on the other hand, the court may go beyond the complaint to resolve the disputed jurisdictional facts. *See Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017) (citation omitted).

### B. Rule 12(b)(6)

A Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009) (citation omitted). *See also Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) . . . does not resolve contests surrounding

3

the facts, the merits of a claim, or the applicability of defenses.") (citation and punctuation omitted). To be legally sufficient, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Rule 12(b)(6) motion "should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief." *Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). When considering a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Id*. (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted).

**III.	Discussion**

As an initial matter, Plaintiff's Amended Complaint only asserts constitutional standing as a representative of its members. (Dkt. No. 111, at ¶¶ 26-28). In its briefing, however, Plaintiff argues that it also has standing to sue in its own right. *See e.g.*, (Dkt. No. 141, at 7; Dkt. No. 142, at 12). Although "it is well-established that parties cannot amend their complaints through briefing," *see S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands*, LLC, 713 F.3d 175, 184 (4th Cir. 2013) (citation omitted), Plaintiff's organization can assert both types of standing, *see Md. Highways Contractors Ass'n v. Maryland*, 933 F.2d 1246, 1250 (4th Cir. 1991) (citation omitted), so the Court will address each of the bases for standing in turn.

4

### A. Constitutional Standing

#### 1. *Organizational Standing*.

"An organization claiming standing in its own right must adequately allege that '(1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *S. Walk*, 713 F.3d at 182 (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)). "The burden of establishing these elements falls on the party invoking federal jurisdiction, and *all three elements* are necessary prerequisites to establish standing." *Dreher v. Experian Info. Sols., Inc.*, 856 F.3d 337, 343 (4th Cir. 2017) (emphasis supplied) (citation omitted). Here, Plaintiff stumbles on the first of these requirements: injury in fact.

"An organization may suffer an injury in fact when a defendant's actions impede its efforts to carry out its mission." *Lane v. Holder*, 703 F.3d 668, 674 (4th Cir. 2012) (citation omitted). "One impediment that the Supreme Court and Fourth Circuit have recognized as an injury is a 'drain on the organization's resources' that frustrates the organization's purpose." *Defs. of Wildlife v. Boyles*, 608 F. Supp. 3d 336, 342 (D.S.C. 2022) (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982); *PETA, Inc. v. Tri-State Zoological Park of W. Md., Inc.*, 843 F. App'x 493, 496 (4th Cir. 2021)). "Certain expenditures, however, cannot confer organizational standing." *Id*. (citation omitted). "For example, an organization's expenditure on a lawsuit cannot constitute an injury in fact sufficient to establish standing." *Id*. (citation omitted). "Otherwise, the very act of filing suit would confer standing." *Id*. (citation omitted).

Plaintiff's mission is to "represent[] the interests of . . . South Carolina's shrimping industry." (Dkt. No. 111, at ¶ 4). It argues that this mission has been frustrated because Defendants' alleged misrepresentations have "diverted sales," inhibiting Plaintiff's ability to "partner[] with local businesses and restaurants to buy, support, and serve local wild-caught South Carolina Shrimp." (Dkt. No. 142, at 12). Defendants contend that Plaintiff's Amended Complaint is devoid of any allegation that Defendants' conduct "impaired [Plaintiff's] ability to advocate for and support commercial shrimpers in South Carolina. Nor has [Plaintiff] alleged that Defendants' conduct has caused the organization [to lose] revenue or led to a decline in its membership." (Dkt. No. 130-1, at 6).

The allegations in the Amended Complaint are not sufficient to establish organizational standing. Here, Plaintiff's Amended Complaint alleges that Defendants' conduct "diverted sales away from legitimate local shrimpers[] and unfairly diluted the market value of South Carolina shrimp." (Dkt. No. 111, at ¶ 35). It also alleges that "Defendants' misrepresentations of fact unlawfully trade on [Plaintiff's] goodwill and reputation for high-quality, local product, which [Plaintiff] has accumulated over its long history as a low country institution." *Id*. at ¶ 2. However, Plaintiff's Amended Complaint does not specifically allege that its ability to represent the interests of South Carolina's shrimping industry has been directly impeded by Defendants' misrepresentations, much less that any of its organizational activities have been burdened by Defendants' alleged conduct. *Cf. Havens Realty*, 455 U.S. at 379 (concluding that the plaintiff organization's allegation that the challenged action "frustrated . . . its efforts to assist equal access to housing through counseling and other referral services," requiring it to "devote significant resources to identify and counteract the defendant's . . . racially discriminatory steering practices," was a "concrete and demonstrable injury to the organization's activities—with the consequent

6

drain on the organization's resources . . .") (citation omitted). In fact, the Amended Complaint does not even state what Plaintiff's organizational activities consist of. And, to the extent Plaintiff claims that pursuing this action against Defendants has impeded its mission, it is well established that "an organization's expenditure on a lawsuit cannot constitute an injury in fact sufficient to establish standing." *Boyles*, 608 F. Supp. 3d at 342 (citation omitted).

Indeed, the Amended Complaint adopts the alleged injuries sustained by Plaintiff's members and passes them off as Plaintiff's own. Namely, the Amended Complaint alleges that Defendants' "false advertising has injured Plaintiff's . . . reputation and . . . sales" and "conflat[ed] Plaintiff . . . with an inferior product." (Dkt. No. 111, at ¶¶43, 44(b)). In the first instance, these allegations do not at all implicate Plaintiff's ability to pursue its mission. Nowhere in the Amended Complaint does Plaintiff allege that it depends on its reputation or revenues from the sale of some unidentified product to aid it in representing the interests of South Carolina's shrimping industry. More significantly, these allegations, even when taken as true, are insufficient considering that Plaintiff does not claim to be a commercial entity involved in the commercial shrimping industry, as its members are. Plaintiff does not allege that it sells, buys, or cultivates shrimp or that it competes with Defendants. It is therefore highly unlikely that Plaintiff itself was—or would be—injured in the manner that it claims by Defendants' alleged seizure of the South Carolina shrimp market through misrepresentations when Plaintiff is not even a commercial participant of such market. *See, e.g.*, *S. Walk*, 713 F.3d at 183 (concluding that the plaintiff organization failed to sufficiently allege facts to establish organizational standing where any injury from the challenged action was suffered by the organization's members, not the organization itself).

Therefore, because the Amended Complaint fails to sufficiently allege that Defendants' conduct has impeded Plaintiff's ability to carry out its mission, Plaintiff fails to allege organizational standing.

    2.  *Associational Standing*.

Because Plaintiff fails to allege an injury to itself in its own right, it "can establish standing only as [a] representative[] of those of [its] members who have been injured in fact, and thus could have brought suit in their own right." *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 40 (1976) (citation omitted).

To plead representational standing, an organization must allege that "(1) its own members would have standing to sue in their own right; (2) the interests the organization seeks to protect are germane to the organization's purpose; and (3) neither the claim nor the relief sought requires the participation of individual members in the lawsuit." *Md. Highways Contractors Ass'n,* 933 F.2d at 1251 (citing *Hunt v. Wash. State Apple Advert. Comm'n,* 432 U.S. 333, 343 (1977)). The Supreme Court has clarified that to show that its members would have standing, an organization must "make specific allegations establishing that *at least one identified member* had suffered or would suffer harm." *Summers v. Earth Island Inst.,* 555 U.S. 488, 498 (2009) (emphasis supplied). The reason for this requirement is sound. Without at least some evidence that an organization's members have been injured, courts would be "accept[ing] the [organization's] self-description[] of [its] membership . . . ." *Id*. at 499. To do so would contravene a court's "independent obligation to assure that standing exists, regardless of whether it is challenged by any of the parties." *Id*. (citation omitted). Indeed, how else is a court to assure itself that the organization has the number of members that it purports to have or that those members have been affected by the challenged conduct? *See, e.g.*, *Lujan v. Defs. of Wildlif*e, 504 U.S. 555, 565-66 (1992) (noting that "a plaintiff

claiming injury from environmental damage must use the area affected by the challenged activity and not an area roughly 'in the vicinity' of it") (citation omitted).

Here, nothing in the Amended Complaint identifies a specific member of Plaintiff's organization affected by Defendants' misrepresentations. *See* (Dkt. No. 111, at ¶¶ 1, 2, 3, 39, 43, 44, 49, 50) (all stating that Plaintiff's members have suffered harm, but none identifying a member or their particularized injury). Plaintiff's Amended Complaint nowhere identifies who its members even are. Are they shrimp farmers? Are they fishermen? Are they seafood restaurants that compete with Defendants? Are they shrimp enthusiasts?

Admittedly, Plaintiff's response briefs state that it "welcomes members who support the shrimping industry," "[o]nly South Carolina shrimpers are granted voting membership," and "[m]embership is not limited to only shrimpers but open to seafood purveyors and restaurants on a non-voting membership [basis]." (Dkt. No. 144, at 15-16). Notwithstanding, such generic descriptions of its membership still fail to *specifically identify a member* of Plaintiff's organization who has suffered an injury in fact. *See Summers*, 555 U.S. at 498 (requiring "plaintiff-organizations to make specific allegations establishing that at least one identified member had suffered or would suffer harm"). And, "[i]t is well established that parties cannot amend their complaints through briefing . . . ." *S. Walk*, 713 F.3d at 184 (citation omitted). Thus, Plaintiff's after-the-fact description of its members is unavailing and does not equate to an allegation that at least one identified member of its organization has been injured by Defendants' alleged misrepresentations.

Plaintiff lacks associational standing for another reason: it fails to sufficiently allege that its individual members can establish standing in their own right. *See Hunt*, 432 U.S. at 343 ("[A]n association has standing to bring suit on behalf of its members when . . . its members would

otherwise have standing to sue in their own right . . . ."). Particularly, Plaintiff asserts that the alleged misrepresentations of over 30 Defendants have harmed its members, yet it fails to plead any facts showing the extent of any such harm suffered by even one member or the degree to which each Defendant caused such harm. *See S. Walk*, 713 F.3d at 185 ("[A]lthough it is possible that each [of plaintiff's] member[s] is being harmed by the [challenged action], [the plaintiff's] terse allegation of its injury—without specific mention of any individual member's injury—surely stops short of the line between possibility and plausibility.") (citing *Iqbal*, 556 U.S. at 678) (punctuation omitted). Without such facts, how can this Court ascertain whether Plaintiff's purported members even suffered an injury? Or to what extent each Defendant is responsible for those injuries? Or how each member determined the extent of their individual injuries? The Amended Complaint leaves these questions unanswered. *See Lujan*, 504 U.S. at 560 (noting that an injury in fact must be "particularized") (citation omitted). *See also Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (concluding that a plaintiff must "clearly allege facts demonstrating" standing) (citation and punctuation omitted). Therefore, the Court finds that Plaintiff fails to allege associational standing.

### B. Statutory Standing

Even assuming Plaintiff could establish constitutional standing, it cannot establish statutory standing under the Lanham Act. The Court need not decide whether Plaintiff has standing under SCUTPA because, as discussed below, it declines to exercise jurisdiction over that state-law claim. *See infra* Section.III.C.2.

"Less well-known is the concept of statutory standing, which is perhaps best understood as not even standing at all." *CGM, LLC v. BellSouth Telecomms., Inc.*, 664 F.3d 46, 52 (4th Cir. 2011). "Statutory standing applies only to legislatively-created causes of action and concerns whether a statute creating a private right of action authorizes a particular plaintiff to avail herself

10

of that right of action." *Id*. (citation and punctuation omitted). In other words, the relevant inquiry is whether "this [plaintiff] has a right to sue under this substantive statute." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 (2014) (citation and punctuation omitted). This inquiry is governed by the statute itself. *See CGM*, 664 F.3d at 52-53 ("In a case where the question is whether Congress intended to confer standing on a litigant like the one at bar to bring an action under the statute at issue, our task is essentially one of statutory construction.") (citation and punctuation omitted). "Normally, where the statutory language provides a clear answer, our analysis begins and ends with that language." *Wilmington Shipping Co. v. New Eng. Life Ins. Co.*, 496 F.3d 326, 339 (4th Cir. 2007) (citation omitted). In the absence of a clear legislative dictate, "we . . . look to legislative intent." *CGM*, 664 F.3d at 53 (citation omitted).

Section 1125(a) of the Lanham Act "creates two distinct bases of liability: false association, § 1125(a)(1)(A), and false advertising, § 1125(a)(1)(B)." *Lexmark*, 572 U.S. at 122 (citation omitted). Here, Plaintiff only alleges false advertising under § 1125(a)(1)(B). (Dkt. No. 111, at 7). That section provides, in relevant part:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . .
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(B). In *Lexmark*, the Supreme Court addressed who may sue under this code section. *See* 572 U.S. at 120. The Court concluded that a plaintiff has statutory standing to sue for false advertising under the Lanham Act when it "fall[s] within the zone of interests

11

protected by the law invoked" and when the injuries suffered were "proximately caused by violations of the statute." *Id.* at 129, 132 (citation omitted). The Supreme Court further elaborated that:

> [T]o come within the zone of interests in a suit for false advertising under § 1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales. A consumer who is hoodwinked into purchasing a disappointing product may well have an injury-in-fact cognizable under Article III, but he cannot invoke the protection of the Lanham Act—a conclusion reached by every Circuit to consider the question.

*Id.* at 131-32 (citation omitted). Additionally, "a plaintiff suing under § 1125(a) ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id.* at 133. "That showing is generally not made when the deception produces injuries to a fellow commercial actor that in turn affect the plaintiff." *Id.* at 133-34.

Plaintiff argues that it has statutory standing because the Amended Complaint alleges that "Defendants' false advertisements and conduct ha[ve] deceived consumers, diverted sales away from legitimate local shrimpers, and unfairly diluted the market value of South Carolina shrimp." (Dkt. No. 144, at 16) (punctuation omitted). Moreover, Plaintiff claims, the Amended Complaint states that "Defendants have intentionally misled consumers, traded on the goodwill of [Plaintiff] and its members, and harmed the goodwill and reputation of [Plaintiff] and its members, all to the detriment of the local shrimping industry, South Carolina's tourism industry, and the South Carolina public." *Id.* Defendants respond that because Plaintiff cannot base its claim on the alleged injuries of its members, the Amended Complaint fails to plausibly allege an injury to Plaintiff that comes within the "zone of interests" protected by the Lanham Act, as Plaintiff has not alleged facts demonstrating that it engages in commerce or competes with Defendants. (Dkt. No. 130-1, at 12-

13). Moreover, Defendants contend that Plaintiff has not alleged injuries proximately caused by a violation of the Lanham Act. *Id*. at 14. Particularly, Plaintiff has not alleged that consumers have withheld business from it or that it has lost sales because of Defendants' misrepresentations. *Id*.

As an initial matter, this Court will consider whether a representative has standing to sue under the Lanham Act based on injuries to its members. *Lexmark* instructs that, to come within the Lanham Act's "zone of interest," a plaintiff must show that it has suffered some commercial injury. *See id*. at 131-32. To crystallize this point, the Court explained that "[a] consumer who is hoodwinked into purchasing a disappointing product may well have an injury-in-fact cognizable under Article III, but he cannot invoke the protection of the Lanham Act . . . ." *Id*. at 132 (citation omitted). In other words, establishing standing under the Lanham Act requires a far narrower type of harm than what is required for constitutional standing.

This is so because the Lanham Act's goals are just as narrow: protecting persons engaged in commerce from unfair competition. *See id*. at 131 ("[A] typical false-advertising case will implicate only the [Lanham] Act's goal of protecting persons engaged in commerce within the control of Congress against unfair competition.") (punctuation omitted). True, the hypothetical consumer—like Plaintiff—is involved in commerce in the sense that she is buying a product from a business, and thus it is conceivable that she may be injured by the deceptive practices of that business. But the Lanham Act's protections are not so far-reaching. Indeed, the statute aims to protect those who are not only engaged in commerce but who are also put at a commercial and economic disadvantage, such as lost business or lost financial revenue, because of another's deception. *See id*. ("[U]nfair competition . . . was understood to be concerned with injuries to business reputation and present and future sales.") (citation and punctuation omitted). It therefore follows that the form of commercial disadvantage contemplated by the Lanham Act can be suffered

13

only by competitors of a business that engages in misrepresentation. *See POM Wonderful LLC v. Coca-Cola*, 573 U.S. 102, 107 (2014) ("The Lanham Act creates a cause of action for unfair competition through misleading advertising or labeling. Though in the end consumers also benefit from the Act's proper enforcement, the cause of action is for competitors, not consumers.").

Thus, to fall within the Lanham Act's "zone of interests," a plaintiff must allege her own commercial injuries to sustain a claim. *See Lexmark*, 572 U.S. at 132 ("Even a business misled by a supplier into purchasing an inferior product is, like consumers generally, not under the [Lanham] Act's aegis."). Applied here, Plaintiff cannot, as it could with associational standing, leverage the harms of its members to establish statutory standing under the Lanham Act; instead, it must show that the organization itself has suffered some commercial disadvantage because of Defendants' alleged misrepresentations.

With this in mind, taking the Amended Complaint as true, Plaintiff fails to establish that it falls within the "zone of interests" of the Lanham Act. Here, the Amended Complaint is totally devoid of any allegation that Plaintiff has or will suffer a commercial injury from Defendants' misrepresentations. That is, the Amended Complaint does not allege that: (1) Plaintiff directly competes with Defendants in South Carolina's restaurant or shrimp industry; (2) Plaintiff has or will suffer a loss of business customers or a loss of financial revenue; or (3) Plaintiff will suffer any other cognizable competitive injury. *Cf. Belmora LLC v. Bayer Consumer Care AG*, 819 F.3d 697, 711 (4th Cir. 2016) (concluding that the plaintiff was in the Lanham Act's "zone of interests" where the "complaint allege[d] [that] Belmora's misleading association with BCC's FLANAX has caused BCC customers to buy the Belmora FLANAX in the United States instead of purchasing BCC's FLANAX in Mexico. For example, the complaint alleges that BCC invested heavily in promoting its FLANAX to Mexican citizens or Mexican–Americans in border areas. Those

consumers cross into the United States and may purchase Belmora FLANAX here before returning to Mexico. And Mexican–Americans may forego purchasing the FLANAX they know when they cross the border to visit Mexico because Belmora's alleged deception led them to purchase the Belmora product in the United States."). *See also Animal Legal Def. Fund v. HVFG LLC*, 939 F. Supp. 2d 992, 1000 (N.D. Cal. 2013) (concluding that plaintiff organization had no standing to sue for false advertising under the Lanham Act where the plaintiff was not a business competitor of the defendant). Rather, it only alleges that "Defendants' false advertising has injured Plaintiff . . . in reputation and in sales" and that Defendants' misrepresentations have "harm[ed] Plaintiff['s] . . . business goodwill" and "conflat[ed] Plaintiff['s] . . . product with an inferior product." (Dkt. No. 111 ¶¶43, 44(b) & (c)). Such naked assertions fall flat because Plaintiff does not allege that it participates commercially in South Carolina's restaurant or shrimp industry, and thus it cannot be injured in the manner that it claims. *See Lexmark*, 572 U.S. at 131 ("[A] typical false-advertising case will implicate only the [Lanham] Act's goal of *protecting persons engaged in commerce* within the control of Congress *against unfair competition*.") (emphasis supplied) (citation and punctuation omitted). In simpler terms, Plaintiff and Defendants do not vie for the same dollars from the same consumer group, and thus Plaintiff does not come within the Lanham Act's "zone of interests."

Accordingly, because the Amended Complaint fails to allege that Plaintiff has or will suffer a competitive injury because of Defendants' misrepresentations, Plaintiff does not have statutory standing to sue under the Lanham Act. Therefore, the court need not address at this point whether the injuries suffered were "proximately caused by violations of the statute."

### C. Failure to State a Claim

In addition to the Court's finding that Plaintiff lacks constitutional and statutory standing to bring this action, the Court also concludes that Plaintiff's Lanham Act claim is subject to dismissal for failure to state a claim.

1. *Lanham Act.*

A plaintiff asserting a false advertising claim under the Lanham Act must establish five elements, showing that:

> (1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products.

*Verisign, Inc. v. XYZ.COM LLC*, 848 F.3d 292, 298-99 (4th Cir. 2017) (citation omitted). "Failure to establish any one of these five elements is fatal to a plaintiff's claim." *Id.* at 299 (citation and punctuation omitted).

Even assuming the Amended Complaint pleads facts sufficient to satisfy the first four elements of the false advertising test, Plaintiff still fails to state a claim because it does not adequately allege the necessary proximate cause between its alleged injury and Defendants' alleged misrepresentations.

The Supreme Court has explained that "it is the core requirement that a plaintiff 'show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising' that assures Article III standing in Lanham Act cases." *Id.* at 300 (quoting *Lexmark*, 572 U.S. at 133). "This is not a minor or technical element of a Lanham Act claim." *Id.* at 299.

"Thus, to meet the indispensable fifth element of a Lanham Act claim, the plaintiff must have been injured or likely will be injured as a result of the alleged misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its product." *Wall & Assocs., Inc. v. Better Bus. Bureau of Cent. Va., Inc.*, 685 F. App'x 277, 278-79 (4th Cir. 2017) (citation and punctuation omitted).

As to the proximate-cause requirement, Plaintiff argues that it has a viable cause of action under the Lanham Act because it alleges that "Defendants' false advertising has injured Plaintiff and its members in reputation and in sales; Plaintiff and its members have been damaged by Restaurant Defendants' false and misleading representations." (Dkt. No. 142, at 7). Plaintiff is incorrect. The Amended Complaint does not identify a *single* customer who withheld or canceled business with Plaintiff. Nor does it *specifically* allege any number of diverted sales or loss of goodwill and reputation directly attributable to Defendants' alleged misrepresentations regarding the origins of their shrimp. In the absence of such factual allegations, Plaintiff has not adequately pled the requisite proximate cause between its purported injury and Defendants' alleged misconduct. *See Lexmark*, 572 U.S. at 133 ("The question [a proximate-cause analysis] presents is whether the harm alleged has a sufficiently close connection to the conduct the statute prohibits."). Therefore, the Amended Complaint fails to state a claim for which relief can be granted.

    2. *SCUTPA*.

Because the Amended Complaint does not allege a valid federal cause of action or diversity of citizenship, this Court declines to exercise jurisdiction over Plaintiff's SCUTPA claim. *See Chase Bank USA, NA. v. Wade*, No. 2:12-cv-3565-RMG, 2014 WL 12616158, at *1 (D.S.C. Mar. 21, 2014) ("The Court may decline to exercise supplemental jurisdiction . . . if 'the district court

has dismissed all claims over which it has original jurisdiction.'") (quoting 28 U.S.C. § 1367(c)(3)).

## IV. Conclusion

For the foregoing reasons, Defendants' motions to dismiss are **GRANTED**. (Dkt. Nos. 129, 130, 131, 132, 133, 134, 135, 137, 138, 139). Plaintiff's Amended Complaint (Dkt. No. 111) is **DISMISSED**.

**AND IT IS SO ORDERED.**

    s/ Richard Mark Gergel
Richard Mark Gergel
United States District Judge

October 30, 2025
Charleston, South Carolina